[Crim. No. 3300.   Second Appellate District, Division One.—April 11, 1940.]

THE PEOPLE, Respondent, v. LEONARD McCULLOUGH, Appellant.

Gladys Towles Root, Eugene V. McPherson and Martin S. Ryan for Appellant.

Earl Warren, Attorney-General, and Burdette J. Daniels, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was charged in counts I and II of an indictment filed by the district attorney with violations of section 288 of the Penal Code on or about June 17, 1939, and in count III thereof with the crime of rape committed on or about July 1, 1939. Count I was dismissed upon motion of the district attorney and the information amended by changing the numbers of the remaining counts to I and II instead of II and III.

This is an appeal from the judgment of conviction rendered pursuant to the jury's verdict finding appellant guilty as charged in both counts of the information as amended, as well as an appeal from the order by which his motion for a new trial was denied.

A reversal is urged primarily upon the ground of the insufficiency of the evidence to support the verdict, and a review of the record sustains such contention.

The testimony of the prosecutrix (a seven-year-old girl), which was elicited from her in answer to interrogatories both leading and suggestive to a marked degree, reveals that she lived at a certain address in Inglewood; that appellant lived on the same street two or three houses removed; that she had visited appellant's home on a number of occasions prior to the time when the acts complained of were committed. She testified upon direct examination that the alleged act of rape occurred on the bed in a bedroom of appellant's home quite a long time before the 4th of July, and that two or three days prior thereto, the alleged act in violation of section 288 of the Penal Code took place in appellant's garage. However, from the testimony of prosecutrix on cross-examination, it appeared that the alleged act of rape took place on Saturday night, July 1, 1939. Prosecutrix was impeached by statements which she made at the preliminary hearing as to the manner in which the act of rape was accomplished. She further testified that she made no outcry at the time, nor complaint thereafter, but immediately afterward she went home and played "Chinese Puzzles" with her cousin, played out of doors with neighborhood boys and girls and later that same evening went back to appellant's home accompanied by her brother, when she talked to Mrs. McCullough but did not see appellant.

In support of Count I of the information, as amended, alleging a violation of section 288 of the Penal Code, the prosecutrix stated that that act occurred on the previous afternoon, Friday, June 30th, in the back yard of appellant's home, whereupon she was impeached by statements made by her at the preliminary hearing to the effect that the only time appellant touched her was on the Saturday when the alleged rape was supposed to have been committed.

In answer to the question on cross-examination, ''Did your mother tell you what to say up here today?'' she replied, ''Yes''; and when asked by the trial judge, '' . . . where did you learn what the words 'private parts' mean? Where did you learn that?'' she answered, ''I learned that from my mother.''

A young girl aged sixteen years, who was a witness for the prosecution, accounted for the whereabouts of the prosecutrix on the night of July 1st except for a period of from fifteen to twenty minutes thereof.

■ The testimony of the prosecutrix, as above outlined, reveals that the child was very uncertain as to the time and place when the acts complained of occurred, and was also uncertain as to the manner in which the crime of rape was accomplished, such uncertainty giving credence to her statement that her mother told her what to say upon the witness stand. In no essential particulars was her testimony directly corroborated. Her mother testified as to the age of said prosecutrix and identified certain articles of clothing which the child was wearing at the time the offense of rape took place, but no evidence of any kind was presented with respect to the physical or mental condition of the child subsequent to the commission of the alleged offenses.

Appellant emphatically denied the accusatory statements made by the little girl and evidence offered in his behalf which tended to establish an alibi stands uncontroverted in the record. In this connection appellant testified that he had dinner with his family at 6:30 o'clock on the evening of July 1st; that the only time he saw the prosecutrix on that day was between a quarter before 8 and 8 o'clock in the evening, when she was playing with a crowd of children on the corner in close proximity to his home; that around 8 o'clock he got in his car and drove to Hermosa Beach to see a friend of his, Byron Sheets, about going fishing the next

day; that he returned home about 10 o'clock and retired. During the day, he stated, his son, his daughter-in-law and his wife were in and about the premises at all times. This evidence as to appellant's whereabouts was corroborated by Mr. and Mrs. Sheets, by appellant's wife, his son, his daughter-in-law, his daughter and her husband. In addition, several witnesses testified that appellant was a man of good repute in the community in which he lived.

In cases of this character about the only defense open to the accused is that of an alibi. Therefore, unless the prosecutrix is firmly held to fixing the time and place of the alleged occurrence, the defendant is deprived of the opportunity to present evidence in support of his contention that he was not present with the child at the time and place claimed. The uncertainty of the testimony of the prosecutrix in the instant case as to the date and time when the offenses allegedly occurred, furnishes a striking example of how a defendant may be deprived of the right to present an alibi. That the prosecutrix may have been a child of immature years and consequently unable to remember dates and time furnishes no valid reason for denying the accused the right to be advised of the exact occasion upon which he is charged with committing the offense. Such exactness might not be necessary if the story told by the prosecutrix found corroboration in other facts or circumstances, but such is not the case here.

Considering that no explanation of the uncertainties or inconsistencies which appear in the child's testimony has been made or attempted, in conjunction with the undisputed fact that the child was told what to say by her mother, as well as the fact that the evidence in support of appellant's defense of alibi stands uncontroverted, it becomes readily apparent that the question of appellant's guilt or innocence was neither carefully nor dispassionately weighed by the jury.

''As frequently has been said regarding cases of the instant character, 'No charge can be more easily made, and none more difficult to disprove.' As a matter of practical observation to many judges who have presided over trials of this nature, it is plainly recognized that, notwithstanding the salutary rule that an accused is presumed to be innocent until his guilt has been established beyond a reasonable doubt, nevertheless, to the mind of the average citizen or juror, the mere fact that a person has been accused of the

commission of such an offense seems to constitute sufficient evidence to warrant a verdict of 'guilty'; and that—instead of its being necessary for the prosecution to prove his guilt beyond a reasonable doubt—in order to secure an acquittal of the charge, it becomes incumbent upon the accused to completely establish his innocence, and to accomplish that result not only by a preponderance of the evidence but beyond a reasonable doubt. . . . In at least a majority of such prosecutions, over the emphatic and categorical denial by the defendant of the incident or incidents testified to by the prosecutrix, the accused is found 'guilty' on evidence that, because of the nature of the asserted offense, rarely is possible of corroboration; and it is not at all improbable that at the instigation of either over-suspicious or misinformed mothers, who may entertain malice or personal prejudice toward the accused, miscarriages of justice often result,—with the consequence that innocent men are or have been humiliated, ruined in character and good reputation, and caused to suffer ignominiously for the alleged commission by them of offenses of which they were or are not guilty.'' (*People* v. *Adams,* 14 Cal. (2d) 154 [93 Pac. (2d) 146, 152].)

For the reasons stated, the judgment appealed from is reversed and the cause remanded for a new trial.

Doran, J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 6, 1940. Carter, J., voted for a hearing.