[Crim. No. 2554.   First Dist., Div. Two.   Mar. 31, 1949.]

THE PEOPLE, Respondent, v. JAMES H. LYLE, Appellant.

James H. Lyle, in pro. per., for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, and Arthur Sherry, Deputy District Attorney, for Respondent.

GOODELL, J.—Appellant was convicted by a jury of second degree burglary. This appeal was taken from the judgment and from an order denying a new trial. Appellant admitted the two prior convictions alleged in the information, one in 1932 of robbery in the State of Kentucky and another in 1940 of "breaking and entering" in the State of Iowa, with time served on each. At the trial appellant was represented by the public defender but on this appeal he presents his own case.

Some time between 6:10 p. m. on Friday, March 12th, 1948, and 7:50 a. m. on the 13th, a leather goods store on 7th Street in Oakland was entered through a skylight, and a desk and safe were broken into. About $15 was taken from the desk; the safe contained only papers and records. The safe was overturned and broken open through the bottom thereof; the dial of the combination lock was missing. The floor was covered with fire clay dust and particles which had been chipped away in breaking into the safe, and papers taken from it were strewn around.

Police investigators arrived promptly and isolated for minute examination the area involved. They photographed the office and the safe. Their examination disclosed on the papers scattered on the floor clearly defined "foot prints" of "Biltrite" rubber heels. Samples of the fire clay insulation were taken for examination and comparison. The locking mechanism of the safe bore marks of a cutting instrument. Inside the safe a small piece of blue cloth was found. Wood bearing

chisel marks was taken from the rear door of the premises, by which the burglar apparently attempted to leave.

When appellant was arrested a few hours after the crime he wore overalls and a blue sport shirt, and carried a change of clothing. The overalls revealed a substantial amount of fire clay identical with the samples removed from the safe and found around it.

A pair of appellant's shoes which had been taken to a near-by bootblack on the morning of the 13th was recovered, identified, and found to have "Biltrite" rubber heels, the impression from which exactly fitted the heel prints on the papers strewn on the floor.

The fragment of torn blue cloth found in the safe not only matched the shirt which appellant wore when arrested but fitted a tear in appellant's shirt just above its right cuff. A stain on the fragment of cloth corresponded with one on the torn area of the shirt worn by appellant.

The investigator in reaching into the safe accidentally scratched his arm on the jagged edge of the hole, and this abrasion corresponded in pattern with a scratch on appellant's arm.

Miss R, a woman friend of appellant, lived about a block away from the burglarized premises and the officers went there with appellant and found a paint-stained chisel in a dresser drawer in her room. The paint on the chisel was the same as that on the wood taken from the damaged rear door. An experiment demonstrated that this chisel also exactly fitted the notches in the damaged portion of the safe's locking mechanism. She testified that the chisel was not hers but that on the morning of March 13th appellant while in her room had stood near the dresser where it was found.

The rubber heel and heel print, fire clay, overalls, sport shirt, cloth fragment, chiseled lock, chiseled wood from the rear door and the chisel itself were all before the jury.

On his claimed alibi appellant testified that on the evening of March 12th he was intoxicated; that he had visited friends named the R family in a hotel from about 7 or 7:15 until about 11, and then went to the room of another friend, a Miss C, in the same hotel and slept there until 8 the next morning and later visited the room where the chisel was found. Miss R testified that appellant visited her at 7 o'clock on the evening of March 12th and again at about 11 the next morning. Miss C testified on direct examination that appellant came to her room about 11 or 11:30 p. m. on the 12th and

that he was "high"; that when she left shortly thereafter he was lying on the bed and that she did not return until 9:30 a. m. on the 13th. On cross-examination, however, she admitted she could not remember the date or even the day of the week of this occurrence. With the exception of Miss R and Miss C, whose testimony when taken together accounted, at best, for less than one hour of the 14-hour period, there was no corroboration of appellant's alibi testimony. None of the R family, with whom he claimed to have spent the time between 7 and 11 p. m. was called to testify.

As part of his defense appellant claimed that two Oakland police officers had extorted $120 from him and later, when they attempted to extort an additional $300, he reported the matter to the district attorney's office. He claims that because he had done so the officers caused his arrest.

On this point appellant testified at length that *some time prior to March 13* (the day of his arrest), the officers in question threatened his arrest unless he paid money to them, pointing out to him that because he was a two-time loser and a Negro it would be an easy matter to secure a conviction on any count with which they cared to charge him. When appellant complained, *some weeks before the burglary*, an assistant district attorney took action. He directed appellant to telephone one of the suspected officers and make an appointment to pay over the money. Appellant was supplied with marked currency, met the officers, drove off in their car, but alighted therefrom without attempting to pass the bills. Representatives of the district attorney's office then arrested the officers, but since no money changed hands the officers were not held. The testimony was in conflict as to whether appellant mentioned any sum of money or the word "pay" in his telephone conversation and whether he deliberately disobeyed a direction not to enter the police car or whether he could not avoid violating the instruction to remain on the sidewalk. The accused officers were not witnesses against the appellant though they did testify in their own defense. The assistant district attorney also testified.

Appellant claims that the evidence was insufficient to support the verdict. The summary which we have given at considerable length shows that there is no basis whatever for this claim.

The evidence connecting appellant with the offense was almost entirely circumstantial. Expert testimony respecting the physical evidence, appellant's admissions of his ownership

of the clothing and shoes, and the testimony of the witness in whose room the chisel was found, all supplemented the circumstantial evidence connecting appellant with the crime. It is seldom that such a connected and convincing set of incriminating circumstances is found in a case. That most of such evidence was circumstantial rendered it no less legally conclusive. "That the commission of a crime may be adequately established entirely by circumstantial evidence is not open to question." (*People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821]; see, also, *People* v. *Koenig,* 29 Cal.2d 87, 91 [173 P.2d 1].)

■■ As for the alibi evidence, we have already pointed out that appellant's testimony was corroborated only to a negligible extent and one of the corroborating witnesses was not sure, when cross-examined, of the date or even the day of the week respecting which she had testified on her direct examination. The burden was on appellant to prove his alibi "to such a degree of certainty as will, upon a consideration of all the evidence, leave a reasonable doubt of his guilt in the minds of the jury." (*People* v. *Alexander,* 78 Cal.App.2d 954, 958 [178 P.2d 813]; *People* v. *Lewis,* 81 Cal.App.2d 119, 124 [183 P.2d 271].) That such doubt was not raised is to be implied from the verdict.

With respect to appellant's claim that he was "framed," it should be borne in mind that even if the jury had been convinced that his testimony was true, the effect of the strong chain of circumstantial evidence of the burglary itself, and his connection with it, would not have been destroyed. It should be observed, further, that the trial judge admitted into evidence all the details of this claimed extortion episode without regard to whether that part of the case was collateral or not. Hence the jury had that entire episode before them to the same extent as they had the physical facts and other evidence which bore directly on the specific offense of burglary. There was no restriction or limitation put on the admission of this testimony and it assumed a rather major and dominating place in the proceedings. With all these facts before them, the jury brought in a verdict of guilty.

The record has been carefully considered and we find it free from error.

The judgment and the order denying a new trial are affirmed.

Nourse, P. J., and Dooling, J., concurred.