[Crim. No. 5806.   Second Dist., Div. Three.   Oct. 23, 1957.]

THE PEOPLE, Respondent, v. CHESTER GERALD RIDOUT, Appellant.

Forno & Umann, Joseph T. Forno and Burton Marks for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

WOOD (Parker), J. — Defendant was convicted, in a nonjury trial, of violating section 288 of the Penal Code. Probation was granted. He appeals from the judgment of conviction.

Appellant contends that the evidence was insufficient to support the judgment; that the alleged confession was obtained by coercion and was inadmissible; and that appellant was deprived of his alibi defense because the prosecuting witness did not specify a definite or approximate date of the alleged offense.

Upon stipulation the case was submitted upon the transcript of the preliminary examination, subject to the right to present further evidence.

At the preliminary examination, Jeanne, a girl 11 years of age, testified that some time while she was in summer school in 1955—about the end of June—at approximately 11 o'clock in the morning she went to the house of defendant; at that time defendant and Linda (his stepdaughter) were in the house; defendant was in the living room; she (Jeanne) went into the bedroom with defendant; she lay upon the bed, and defendant lay against her; he took her shorts down and he lay upon top of her; one time he touched her where her private parts are.

At the trial, Jeanne testified that while she was in summer school in 1955, she went into the bedroom of defendant's house and he tried to put his private parts inside of her; at that time she was lying on her back and he was on top of her; her shorts were at her ankles; she thought this occurred about the end of June, 1955; Linda was in the bedroom at that time; after he had done that he gave her (Jeanne) a dollar with which to go horseback riding.

At the preliminary examination, Linda, who was called as a witness by the prosecution, testified that she and Jeanne did

not go to her (Linda's) house about June 30, 1955, when defendant was at the house; they were at the house but defendant was working and was not there. Thereupon, the deputy district attorney requested permission to play a tape recording of statements made by Linda in a conversation with Officer Ferguson at the police station. The deputy stated that he requested such permission in order to refresh the memory of the witness. Officer Ferguson testified that the recording was a correct recording of the conversation. Over objections of defendant, the permission was granted and portions of the recording were played. Jeanne testified that she recognized the voices on the recording as the voices of herself and Officer Ferguson. Some of Linda's statements, as recorded, were to the effect that she (Linda) was not in the room with Jeanne; she (Linda) was in the front room and she knew that Jeanne lay down because she (Linda) peeked through the door; Jeanne told a story when she said Linda lay down with defendant; Officer Ferguson told Linda that nothing would happen to her or defendant if she said what is on the recording; the statements thereon are not true.

At the trial, Linda (called as a witness by defendant) testified that she did not at any time see defendant have anything to do with Jeanne; she (Linda) never saw defendant in the bedroom with Jeanne. On cross-examination she testified that she did not remember that she told the officers that "this happened" in the bedroom of her home; she did not tell the officers that defendant told Jeanne to lie on the bed; that she said what Officer Ferguson told her to say.

Officer Ferguson testified that he was present when defendant placed his signature on a paper, Exhibit 2; the writing on that exhibit is defendant's handwriting; the statements thereon were voluntarily written.

On cross-examination, Officer Ferguson testified that the paper was signed on Monday, September 5, 1955; he arrested defendant on Friday, September 2, and filed the charge against him on September 6; after defendant was arrested he asked permission to talk to his wife; such permission was not granted because he was being held incommunicado; defendant did not at any time ask permission to communicate with counsel; he (officer) did not see defendant on Saturday or Sunday; on Monday he asked defendant to "make out" a statement.

The statement of defendant (Exhibit 2) was in substance as follows: On or about June 30, 1955, Jeanne was at his home and she offered to have intercourse with him if he would

give her money to go horseback riding; she went into the bedroom and pulled off her panties of her own free will; he lay down beside her; he does not believe that he got on top of her or pulled his pants down.

A supervisor of the school district in which Jeanne resided testified that the summer session of the school commenced on July 5, 1955, and closed on July 29; the school records show that Jeanne was present at school every school day during that session except July 15 and 28.

Defendant testified that he was employed by the Stanford Process Company from June 21 to July 15, 1955; every day during that time, except Saturdays, Sundays and July 4, he worked for that company from approximately 6:45 a.m. to 4 p.m. (which included Thursday, June 30); he was arrested at his service station on Friday, September 2, about noon, and was placed in the Lynwood city jail in a small cell; he asked for permission to talk to counsel; Officer Ferguson told him he could not communicate with anyone; his eyeglasses were taken from him; a dome light in the cell was on day and night from Friday until Tuesday morning; he was not allowed out of the cell from Friday until Monday except at eating time; it was very hot weather while he was in the cell; he had a 50 per cent disability from military service and he had continuous headache; his headache was greater when he did not have his glasses; he did not get his glasses until Monday; on Monday, Officer Ferguson told him that Jeanne had admitted that she went into his bedroom and pulled off her shorts; the officer said that this occurred on June 30; the officer also told him that if he would write a statement he (officer) would let defendant go into the front part of the jail where there was a cross-draft; then defendant wrote Exhibit 2; at that time he would have signed any statement; he signed the statement because he knew that particular date (June 30) was not correct and he knew where he was on that date; he never invited Jeanne into his bedroom and he never took down her pants or shorts.

The office manager of the Stanford Process Company, where defendant was employed, testified that the timecards of the company show that defendant worked there every day from June 21 to July 15, except Saturdays, Sundays and July 4; and the cards show that he worked from approximately 7 a.m. to 4 p.m.

Mr. Mundy testified that he stayed at defendant's house from 9 a.m. to 5 p.m. every day from June 26 to July 4,

except June 29; he slept there from approximately 9 a.m. to approximately 3 p.m.; he did not see Jeanne at the house.

The wife of defendant testified that she was at home on Saturday, July 2, until 4:30 p.m.

Officer Ferguson testified, in rebuttal, that he did not tell defendant that he was being held incommunicado; defendant did not ask for an attorney; the light in the top of the cell is automatically controlled and it turns off about 9:30; he (officer) did not tell defendant that if he would write the statement he would be permitted to stay in the front part of the jail; on Monday, September 5, (before the statement was made) he asked defendant what had happened; defendant said that Jeanne approached him with a proposition about horseback riding and offered to have a sexual act with him for a dollar, that she lay on the bed and took off her shorts, that he sat on the bed but he did not believe that he touched her; the officer asked him if he would put the statement in writing; thereupon the defendant wrote the statement; the tape recording of Jeanne's conversation (which had been played in defendant's presence) mentioned the date of June 30 several times; defendant said that he was not certain that the exact date was June 30 but the date was in that neighborhood; the officer told defendant (with reference to placing the date in the statement) that "On or about is all right."

Appellant argues that the testimony of the prosecuting witness was uncorroborated and highly improbable. ██ Corroboration of her testimony was not necessary. (See *People v. Cox,* 104 Cal.App.2d 218, 219 [231 P.2d 91].) The credibility of the witnesses was a question for the determination of the trier of the facts. (*People v. Carlson,* 73 Cal.App.2d 933, 940 [167 P.2d 812].) The testimony of the prosecuting witness was not inherently improbable.

Appellant contends further that the alleged "confession" was inadmissible in that it was not voluntarily made but was obtained by coercion. He argues that he did not write the statement voluntarily, but he was pressured by the police into writing it; that his confinement in the small, hot, and continuously lighted cell for three days without being allowed to communicate with anyone was a part of the pressure brought to bear upon him; and that, in view of his headache and other physical disabilities, other pressure consisted of activities of the police in depriving him of his eyeglasses and in prompting him as to what he should write. It is not neces-

sary to decide whether the statement is a confession or an admission. In any event, there was evidence on behalf of the prosecution that the statement was made voluntarily, and there was evidence on behalf of the defendant to the contrary. When there is a substantial conflict in the evidence as to whether a statement was made voluntarily, the question as to voluntariness of the statement is for the determination of the trial court. (See *People* v. *Mehaffey*, 32 Cal.2d 535, 548, 554 [197 P.2d 12].) A ruling of the trial court with reference to whether a statement was made voluntarily will not be disturbed on appeal if there is substantial evidence to support the ruling. (See *People* v. *Sewell*, 95 Cal.App.2d 850, 855 [214 P.2d 113].) In the present case Officer Ferguson testified that the statement was freely and voluntarily made, and that no threat was made against defendant and no promise of reward or immunity was extended to him. No objection was made when the statement was offered in evidence. As above indicated, this court cannot weigh the conflicting evidence regarding the circumstances under which the statement was made. It was not error to receive the statement in evidence.

Appellant also contends in effect that he was deprived of his alibi defense because the trial court did not require proof as to the exact or approximate date of the alleged offense. He states further that the trial court's disposition of the alibi defense, by a statement that the little girl could not remember dates, was a deprivation of defendant's right to a fair trial. In *People* v. *McCullough*, 38 Cal.App.2d 387 [101 P.2d 531], wherein the charge was violation of section 288 of the Penal Code, the court said at page 390: "In cases of this character about the only defense open to the accused is that of an alibi. Therefore, unless the prosecutrix is firmly held to fixing the time and place of the alleged occurrence, the defendant is deprived of the opportunity to present evidence in support of his contention that he was not present with the child at the time and place claimed. . . . That the prosecutrix may have been a child of immature years and consequently unable to remember dates and time furnishes no valid reason for denying the accused the right to be advised of the exact occasion upon which he is charged with committing the offense. Such exactness might not be necessary if the story told by the prosecutrix found corroboration in other facts or circumstances, but such is not the case here." In the present case, the written statement

of the defendant included a statement that on or about June 30, 1955, Jeanne was in his home and she offered to have intercourse with him, and she went into the bedroom and pulled off her panties, and he lay down beside her. His written statement was corroboration of Jeanne's testimony that some time while she was in summer school in 1955, about the end of June, she and defendant were on the bed in the bedroom of defendant's home. In view of such corroboration of her testimony, exactness as to the date of the alleged offense was not required. There was evidence, regarding the alibi, to the effect that defendant was working at the Stanford Process Company from June 21 to July 15, except on Sundays, Saturdays, and July 4. June 30 was Thursday. July 2 was Saturday. The expression "about June 30," used by Jeanne and defendant, could be interpreted as including July 2. The testimony of defendant's wife was that she was at home on July 2 until 4:30 p. m. That testimony, however, did not tend to prove that defendant was away from home on July 2. Appellant states that the testimony of the alibi witnesses was uncontradicted and the trial court could not disbelieve them. Even if their testimony was accepted by the court as being correct, the court was not required to find that the alibi evidence accounted for the whereabouts of defendant "about June 30."

The evidence was sufficient to support the judgment.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.