[Crim. No. 6312. Second Dist., Div. One. Mar. 18, 1959.]

THE PEOPLE, Respondent, v. ERNEST WILLIAMSON, Appellant.

736

Harrison M. Dunham for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—An information filed by the district attorney of Los Angeles County accused defendant of the crime of burglary (Pen. Code, § 459). He was tried by a jury, found guilty of burglary of the second degree, and sentenced to state prison. From the judgment of conviction defendant prosecutes this appeal.

We regard the following as a fair statement of the factual background surrounding this prosecution. On June 4, 1957, George H. Harris, a clothing salesman, was employed as a salesman at Rick's Store for Men in Los Angeles, and resided at 1820 Westmoreland Boulevard, Apartment 2, with his wife and child. Defendant had been to the Harris apartment on at least two occasions during April, 1957, visiting with a niece of Mrs. Harris who resided with the latter at that time. On one of these occasions, defendant was introduced to Mr. Harris.

Mr. Garrett, a sales clerk at Rick's Store for Men in Los Angeles, saw defendant at Rick's around June 1, 1957. Mr. Garrett was positive that it was the defendant he had seen there at that time.

On the morning of June 4, 1957, Mr. Harris and his wife left their apartment at about 8 o'clock, leaving no one in the apartment. Mr. Harris locked and secured all the doors and windows before he left. He did not give defendant or anybody

else permission to enter his apartment or to take anything from the apartment in his absence.

There were five units in the apartment building where Mr. Harris lived. Two of these apartments were to the front of the building, toward the street. Harris occupied one of these front apartments and the other one, directly above his, was occupied by Flora Jackson. On June 4, 1957, at approximately 9:45 in the morning, Mrs. Jackson was busy in the living room of her apartment. At that time she saw the defendant drive up in a 1947 black Ford and back up in the driveway below. He got out of the car and went around toward the rear. The motor of the car was running all this time. Mrs. Jackson watched him as far as she could see him as he went around toward the rear. She waited and in a few minutes defendant came back. Mrs. Jackson then heard a noise as though a window was being raised. She stood there and waited and in a few minutes she saw defendant come out with some clothes on his arm. He put the clothes on the front seat of the automobile. Then he went back in and came out with a high fidelity phonograph and put that in the trunk of the car. Mrs. Jackson could not tell just exactly what color the clothes were, but to her they looked like suits and they were still on hangers.

Before the car left the driveway, Mrs. Jackson wrote down the license number on a piece of paper which she later turned over to the police. The license number of the car was FUV-684.

Mr. Harris returned at about 1:30 that afternoon. He noticed that a window in his apartment had been forced and the pane shattered. His high fidelity phonograph was missing from the living room. Also missing were a watch, a camera and his wardrobe consisting of several suits (including People's Exhibit 3, which at the time had a label in it), a sport coat, about four pairs of slacks, two jackets, some shirts, sweaters, neckties and a belt. These articles of clothing had been hanging in the closet of the apartment.

Charles B. Burelson, a police officer for the city of Los Angeles, on the afternoon of June 9, 1957, stopped a car with a license number FUV-684, because of information he had concerning it. In searching the car one of the objects he discovered was a pinkish colored card from the unemployment office (People's Exhibit 2 for identification), bearing the name Williamson. The name on the card was actually Willie Williamson and not Ernest Williamson, the name of defendant. The address given on this card was 856 West 57th Street. Mrs. Eleby lived at 860 West 57th Street and her sister lived next

door at 856 West 57th Street, the address on this card. She knew the defendant as he had roomed with her at her residence for about five weeks in 1955. While he roomed there he often visited at her sister's place next door and often drove her sister's daughter to work. Mrs. Eleby did not know a William Williamson. She knew the defendant had a brother but she was not acquainted with him and had never heard of his name.

In a brief conversation on September 12, 1957, defendant told Mr. Dennis, a police officer for the city of Los Angeles, that one Mattie Lee had loaned him this particular Ford automobile with license number FUV-684 on two or three occasions.

Mr. Rick, who operated a secondhand store in Stockton, California, recognized the defendant, as he had seen him in his store three or four times in 1957. He also recognized a suit (People's Exhibit 3) which appellant had sold him in June, 1957. At that time Mr. Rick had observed that the label was torn off and he had asked the defendant why. The latter said he had bought it secondhand. Mr. Rick's records indicated that he paid defendant $7.00 for the suit on June 24, 1957, with the provision that defendant could buy it back within a certain length of time, and that defendant took the suit out on June 26, but brought it back for Mr. Rick to buy on July 29. When asked whether he had any further dealings with defendant in regard to the suit of clothing Mr. Garrett replied, ''Yes he—he had taken it out on the 26th and he had put it back on to buy the 29th.''

Sworn as a witness in his own behalf, defendant testified that on June 4, 1957, the date of the burglary, he was working for the Edward Yancey Corporation, building homes in the city of Stockton, California. That at no time during the months of April, May or June, 1957 was he in the city of Los Angeles. That the only time he was in Los Angeles prior to June, 1957 was ''pretty near the first of the year,'' at which time he resided at the Clark Hotel. Defendant however, further testified that he had gone to the Harris apartment some eight or 10 times during March and April, 1957 to visit Mrs. Harris' niece. With regard to the suit in question (People's Exhibit 3) defendant testified it belonged to him and that he made a loan on it at Rick's Store in Stockton during July, 1957. That he had similar transactions with Rick's Store in connection with this suit, ''three or four or five times,'' and had also borrowed money on other suits ''quite a few times'' over a period of some 10 years. Defendant testified that Willie Williamson

was his brother and formerly lived in Stockton, though he had worked in Los Angeles. Defendant testified he had never seen the unemployment card (People's Exhibit 2) until it was produced in court. That he did not know the whereabouts of his brother in June, 1957. Defendant further testified that he lived with his mother at 637 Market Street, Stockton, California for the entire month of May and a portion of the month of June, 1957; and that he saw his mother every day.

Reverend W. D. Peterson testified that he was a minister of a church located at 2354 S. Pilgrim Street, Stockton, California. That he had been a minister for 11 years. That he had known the defendant for approximately 10 years.

That in June, 1957 he had seen him in Stockton, California.

Homer Patillo, testified that he lived at 637 W. Market Street, Stockton, California and was a retired government worker.

That he saw defendant in Stockton between the 1st and 15th of June, 1957.

Iantha Williamson, wife of Ernest Williamson, the defendant, testified that the latter was working in Stockton during the months of May and June, 1957. That she was not living with her husband at the time but that she saw him every day. She testified that defendant was living with his mother during the months of May and June, and that he was working for the Edward Yancey Corporation as a carpenter.

■ As his sole ground for reversal appellant, while conceding that on appeal, the court is limited to a determination of whether or not there is contained in the record, sufficient substantial evidence to warrant the conclusion arrived at by the duly constituted arbiters of the facts nevertheless, earnestly urges that as a matter of law, the evidence herein lacks that substantiality necessary to support a guilty verdict. With this contention we cannot agree. ■ The applicable rule is thus stated in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] : "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ■ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground of insufficiency of the evidence, it must be made clearly to appear *that upon no hypothesis whatever is there sufficient substantial evidence to*

*support the conclusion reached in the court below.* The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . ██ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ██ If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)'' (Emphasis added.)

██ That a burglary had been committed was indisputably established by the testimony of Mr. Harris, the victim thereof, and that of Mrs. Jackson who lived in the apartment above that of Mr. Harris. Their testimony clearly established that someone had entered the Harris apartment and that such entry was made with the intent to commit larceny.

As to the sufficiency of the evidence to show that appellant was the perpetrator of the crime, the jury had before it the testimony of Mrs. Jackson that he was the man she saw on June 4, 1957, approach the apartment of Mr. Harris. That after she heard a noise as though a window was being raised, she saw him carrying out clothing and a high fidelity phonograph and loading them into an automobile parked in the driveway. Mr. Garrett, another witness for the prosecution, stated he was positive he saw appellant in Los Angeles around June 1, 1957. True, appellant offered an impressive alibi, viz., that he was working in Stockton on the date of the burglary, but this merely created a conflict with the testimony given by witnesses for the People. And this conflict having been resolved by the jury against appellant, the jury's finding thereon cannot be disturbed on appeal. ██ As was said in *People* v. *Mercer,* 103 Cal.App.2d 782, 790, 791 [230 P.2d 4]: ''. . . The question whether or not the defendants sufficiently established an alibi under the evidence was a factual question for the determination of the jury. ██ The burden is upon the defendants to prove their alibis to such a degree of certainty as would, upon a consideration of all of the evidence, leave a reasonable doubt of defendants' guilt in the minds of the jury. (Citing cases.) ██ The jury having found against the defendants' claimed defense of alibi, such finding cannot

be disturbed on appeal. (Citing cases.)'' (See also *People* v. *Villarico*, 140 Cal.App.2d 233, 238 [295 P.2d 76].)

In addition to the evidence above adverted to, there was testimony that appellant was familiar with the burglarized premises, having admitted he had visited the same some eight or 10 times. Familiarity of the accused with the premises invaded is a circumstance which the jury may consider (*People* v. *Mercer, supra*, p. 790; *People* v. *Carroll*, 79 Cal.App.2d 146, 148 [179 P.2d 75]).

Mr. Rick, a secondhand clothing dealer from Stockton, bought the suit marked People's Exhibit 3 from the appellant on June 24, 1957. This was less than three weeks after the burglary. The appellant admitted the truth of this transaction, but stated he was under the impression it was a loan rather than a sale. Regardless of the nature of the transaction, the record thus shows that appellant had possession of this suit shortly after the burglary. Mr. Harris identified this suit as his own and as one of the suits missing from his apartment on June 4, 1957. The fact that property alleged to have been stolen from the burglarized premises was in the possession of the appellant soon after the crime is a circumstance bearing on the appellant's guilt. (*People* v. *Citrino*, 46 Cal.2d 284, 288 [294 P.2d 32]; *People* v. *Brown*, 136 Cal.App.2d 244, 246 [288 P.2d 984]; *People* v. *Mercer, supra*, p. 789.) While possession alone of stolen property in a burglary is not of itself sufficient to sustain the possessor's conviction of that burglary, nevertheless, when however, possession is shown, the corroborating evidence may be slight. In the instant case, Mr. Harris identified the suit of clothes as his and the peculiar manner in which the suit had been altered in the waist, coupled with the fact that it fit Mr. Harris ''perfectly,'' entitled the jury to conclude that the identification thereof was sufficient. Added to this is the testimony of Mr. Rick that appellant told him that the reason the label on the suit was missing was because appellant had purchased it secondhand.

When an accused makes an explanation as to the manner in which he came into the possession of stolen property, the verity of such explanation rests solely with the jury (*People* v. *Taylor*, 4 Cal.App.2d 214, 217, 218 [40 P.2d 870]).

There is a further circumstance that while appellant stated he did not recognize, nor had he ever borrowed the automobile described by Mrs. Jackson as the one used by the burglar, the jury was entitled to consider that an employment card (People's Exhibit 2) bearing the name Willie Williamson,

the name of appellant's brother, and an address next door to the address where appellant had lived in 1955 was found in the vehicle. The jury could therefore, disbelieve appellant when he denied ever having borrowed the automobile. Also, appellant stated to Officer Dennis on September 12, 1957, that he had in fact borrowed this particular automobile on two or three occasions.

Appellant places reliance on the cases of *People* v. *Draper*, 69 Cal.App.2d 781 [160 P.2d 80], and *People* v. *Graziano*, 83 Cal.App.2d 701 [189 P.2d 518]. However, these cases are easily distinguishable from and unlike the factual situation present in the case at bar wherein appellant was recognized at the time and place of the burglary loading articles similar to those stolen, into a waiting automobile, that he had a portion of the stolen property in his possession shortly after the crime was committed, and was admittedly familiar with the burglarized premises. In view of the foregoing, we are unable to say that "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below" (*People* v. *Newland, supra,* p. 681). Therefore, we are without authority to interfere with the determination of the jury.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.