568 P.2d 206
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Mike SIERRA, Defendant-Appellant.**

**No. 2872.**

Court of Appeals of New Mexico.

July 19, 1977.

Rehearing Denied July 29, 1977.

Writ of Certiorari Denied Aug. 23, 1977.

David L. Norvell, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Ernesto J. Romero, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of making or permitting a false public voucher contrary to § 40A–23–3, N.M.S.A.1953 (2d Repl. Vol. 6, 1972) defendant appeals asserting four points for reversal, namely: (1) unconstitutionality of the statute; (2) failure to grant a change of venue; (3) failure to give a requested instruction; and, (4) insufficiency of the evidence. Issues raised in the docketing statement and not argued on appeal are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). We affirm.

### Constitutionality of the Statute

Section 40A–23–3, supra, states:

"... Making or permitting false public voucher consists of knowingly, intentionally or willfully making, causing to be made or permitting to be made, a false material statement or forged signature upon any public voucher, or invoice supporting a public voucher, with intent that the voucher or invoice shall be relied upon for the expenditure of public money.

"Whoever commits making or permitting false public voucher is guilty of a fourth degree felony."

■ Defendant contends that the statute is unconstitutionally "vague, ambiguous and indefinite." He asserts that by the use of the word "material" a man of common intelligence would find it impossible to determine what statements were materially false. We disagree.

As we stated in *State v. Najera*, 89 N.M. 522, 554 P.2d 983 (Ct.App.1976):

"A statute violates due process if it is so vague that persons of common intelligence must necessarily guess at its meaning. 'The vagueness doctrine is based on notice and applies when a potential actor is exposed to criminal sanctions without a fair warning as to the nature of the proscribed activity.' *State v. Marchiondo*, 85 N.M. 627, 515 P.2d 146 (Ct.App.1973)."

We are guided by two rules.

First, words in the statute are given their ordinary meaning unless a different intent is clearly established by the legislature. *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (Ct.App.1976). We find no different intent expressed.

What is the ordinary meaning of "material?" Webster's Third New International Dictionary (Unabridged Ed.1966) states:

"... being of real importance or great consequence: *substantial* ... (2) *Essential* ...."

The Random House Dictionary of the English Language (Unabridged Ed.1969) states:

"... of substantial import; of much consequence; important: ... pertinent or essential (usually fol. by to): ... *Law*. likely to influence the determination of a case: *material evidence*. ...."

■ The meaning of "material" is not vague, ambiguous or indefinite. It does not import anything less than a matter which is so substantial and important as to influence a party.

Second, we consider the statute as a whole. *State v. Orzen*, 83 N.M. 458, 493 P.2d 768 (Ct.App.1972). Given the ordinary meaning of "material" we find that the statute gives notice of the following prohibitions: (1) knowingly or intentionally or willfully; (2) making or causing to be made or permitting to be made; (3) a false statement which would affect a decision to expend public money; (4) by an invoice to support a public voucher; (5) intending that the invoice would be relied upon for the expenditure of public money.

Accordingly, the statute is not vague, ambiguous or indefinite. It gives fair warning of the prohibited acts and declares those acts to be a crime.

### Venue

Defendant filed a motion for a change of venue based upon an article which appeared

in the Albuquerque Journal and his own affidavit. The state offered no evidence. After a hearing the trial court stated that it would call forty jurors rather than the usual twenty-four and if it appeared they would run out of jurors, who had read the article and formed an opinion, then it would grant a change of venue. The trial court then stated it was ". . . going to hold in abeyance ruling on this until I have satisfied myself one way or another that he can get a fair trial or that he can't. . ."

Subsequently and after voir dire of the jury the trial court made the following findings. Each finding is substantially supported by the record:

"1. The Defendant's Motion for Change of Venue was set to be [heard] by the Court on Monday, January 10, 1977 at 9:30 a. m. The Court heard arguments of counsel and considered the Defendant's Affidavit at that time and date.

"2. After hearing the arguments of counsel and consideration of the Defendant's Affidavit, the Court deferred ruling on the Motion for Change of Venue until after Voir Dire of the prospective jurors was completed.

"3. Voir Dire of approximately forty (40) jurors in this cause commenced at approximately 1:30 p. m. on January 10, 1977.

"4. During Voir Dire only approximately eight (8) of the prospective jurors indicated that they had prior knowledge, through the newspaper or other news media, of the facts of this cause. Of these eight (8), all but one stated, after questioning, that such knowledge would not affect or prejudice his or her decision or deliberation in this cause.

"5. The one (1) juror (Barton Davis) who indicated that his prior knowledge of the case would affect or prejudice his decision or deliberation was excused for cause by the Court.

"6. Both the State and the Defense questioned all the prospective jurors about any news accounts they (the jurors) might have heard or read about this cause.

"7. When given the opportunity to challenge prospective [jurors] for cause, the Defendant's attorney challenged only one prospective juror (Barton Davis) for cause.

"8. Barton Davis was excused by the Court for cause.

"9. Twelve (12) jurors and two (2) alternates were selected to serve as jurors in this case. The Defendant's counsel never attempted to challenge any of these individuals for cause, and in fact, exercised only three (3) of his preemptory challenges during selection of the jurors.

"10. After the jurors and alternate jurors were selected, the Defendant's counsel did not make any objection to proceeding with the trial."

Defendant relies on *State v. Alaniz*, 55 N.M. 312, 232 P.2d 982 (1951) ". . . for the proposition that when a defendant seasonably files a Motion for Change of Venue, supported by the Affidavit of his counsel, which met the requirements of the statute, and the State did not controvert the charges in the Motion for Change of Venue by any positive pleading whatsoever, nor did it offer any testimony to the contrary, the Court is without discretion to deny the Motion for Change of Venue."

We assume, without deciding, that defendant properly characterizes *Alaniz*. However, here the trial court did not rule on the motion until after the voir dire of the jury. Whereas in *Alaniz* the trial court ruled solely on the basis of the motion and the affidavit. The voir dire was evidence to be used by the trial court in reaching its decision. *Deats v. State*, 80 N.M. 77, 451 P.2d 981 (1969). Thus, having been presented with evidence contrary to defendant's affidavit, the trial court could deny defendant's motion. Our review is then only for an abuse of discretion. *Deats v. State*, supra. A review of the record fails to reveal an abuse of discretion.

*Instruction Requested*

Defendant contends it was error to refuse a requested instruction. Defendant

does not cite us to the record for evidence to support his requested instruction. This is a clear violation of N.M. Crim.App. Rule 501(a)(4) and (e). The contention will not be considered. *City of Farmington v. Sandoval*, 90 N.M. 246, 561 P.2d 945 (Ct.App. 1977).

*Insufficiency of the Evidence*

■ Defendant contends the evidence is insufficient to show that he committed the offense on June 28, 1975, the date charged in the indictment. There is evidence that the false invoice was signed on October 30, 1975, but there is also evidence that it was signed on June 28, 1975. The date of signing was for the jury to determine.

Affirmed.

IT IS SO ORDERED.

WOOD, C. J., and SUTIN, J., concur,