616 P.2d 406

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Wayne Jeffrey ROBINSON, Defendant-Appellant.**

**No. 12483.**

Supreme Court of New Mexico.

April 14, 1980.

Jack Smith, Stephen C. M. Long, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy Lawrence Pacheco, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

FELTER, Justice.

Defendant, Robinson, was convicted under Count I of murder in the first degree; Count II of murder in the first degree; and. Count III of aggravated battery with a firearm. He was sentenced to consecutive terms of life imprisonment upon each of Counts I and II and a term of not less than seven years nor more than fifteen years upon Count III. The Count III sentence was made consecutive to the Count I sentence, but concurrent with the Count II sentence.

Five issues are presented on appeal. The essential facts will be developed within the discussion of each of these issues.

 I. Whether the court erred in denying the defendant's motion for a change in venue?

 II. Whether the court erred in denying the defendant's motion for a directed verdict upon the charge of first degree murder of Tim Walker?

 III. Whether the court erred in admitting the testimony of Kathy Miller under exceptions to the hearsay rule?

 IV. Whether the Court erred in refusing defendant's requested jury instructions relating to character evidence and alibi?

 V. Whether the court erred in refusing to instruct the jury upon voluntary manslaughter as a lesser included offense?

We affirm the judgment and sentence of the trial court.

## I.

In support of his motion for a change of venue, the defendant filed his affidavit or jurat to the motion and presented the testimony of three witnesses. After hearing argument on the motion, the court deferred final decision on the motion in order to consider the voir dire of jurors and determine whether the jurors had formed an opinion as to the guilt of the defendant. In so doing, the court stated that certain fair trial protections from prejudicial publicity can be afforded a defendant, one of which is sequestration of jurors if requested.

Defendant filed a motion to reconsider the change of venue motion, based, *inter alia*, upon news accounts of the court's decision to sequester the jury in the case. Again the court deferred final decision on the motion and reiterated the intention to employ "extra-ordinary precautions" by means of voir dire of jurors to ensure a fair trial and an impartial jury. No evidence was presented in support of the "Motion to Reconsider Change of Venue Motion". It was supported only by argument of counsel.

Based upon questions submitted by both parties, the trial court exclusively conducted the initial screening process of 123 venire persons. This process was conducted by dividing the panel into groups of twelve, and the court made clear its intention of excluding *sua sponte* any prospective juror who had formed an opinion as to the innocence or guilt of the defendant, without further inquiry as to the particulars of such predilection.

No error is predicated upon a failure to excuse any prospective juror whose responses manifested any kind of taint from pretrial publicity or otherwise. Error is predicated entirely upon the posture of the request for a change of venue prior to voir dire, coupled with a claim that prospective juror responses on voir dire of those not excused were not reliable and assurances by them were insufficient to protect the defendant's right to a fair trial.

The Court of Appeals held in *State v. Lunn*, 88 N.M. 64, 537 P.2d 672 (Ct.App. 1975), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976), that a change of venue need not be granted as a matter of right upon an affidavit in support of a motion for a change of venue. It is for the trial court to determine whether further evidence on the motion should be required. Subsequently, in *State v. Sierra*, 90 N.M. 680, 568 P.2d 206 (Ct.App.1977), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977), the court held that where the trial court did not make a final ruling on a motion for change of venue until after voir dire of the jury, voir dire is evidence to be used by the trial court in reaching its decision. Such a decision thus made will not be disturbed on appeal absent an abuse of discretion by the trial court. *See also Deats v. State*, 80 N.M. 77, 451 P.2d 981 (1969); *State v. Fernandez*, 56 N.M. 689, 248 P.2d 679 (1952); *State v. Alaniz*, 55 N.M. 312, 232 P.2d 982 (1951); *State v. Evans*, 85 N.M. 47, 508 P.2d 1344 (Ct.App.1973).

We cannot find an abuse of discretion by the trial court in not granting a change in venue.

## II.

The motion for a directed verdict of acquittal on the charge of first degree murder of Tim Walker is directed to the sufficiency of the evidence to establish a prima facie case supporting the charge. The narrow question thus presented in this case is whether there is substantial evidence to show deliberate intent to take the life of the deceased, Tim Walker.

■ In ruling on a defense motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. *State v. McKay*, 79 N.M. 797, 450 P.2d 435 (Ct.App.1969). And a verdict of not guilty should be directed only when there are no reasonable inferences or sufficient surrounding circumstances from which to infer intent. *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). A directed verdict is not proper where there is substan-

tial evidence to support the conviction. *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion. *State v. Manlove*, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968), *cert. denied*, 79 N.M. 159, 441 P.2d 57 (1968). The element of intent involves the state of mind of the defendant, and since it is seldom, if ever, susceptible to direct proof, it may be proved by circumstantial evidence. *See State v. Ferrari*, 80 N.M. 714, 460 P.2d 244 (1969).

■ Under the criteria and tests by which the motion for a directed verdict is to be viewed, the evidence supports the following conclusions of fact and inferences. A high speed chase took place where a car similar to defendant's was overtaking a car apparently containing Tim Walker and the other victim. The two cars stopped in front of Walker's home and Walker got out of his car and went over to the other car on the driver's side. He was seen "talking to the driver" or "leaning down like he was talking to someone for a few seconds." A witness, assuming that Walker had been hit by the car he was standing next to, then saw his body fall to the ground, his back toward the ground and his arms and legs still in the air. Medical testimony revealed that at this point Walker had been dealt a nonfatal shot in the chest area. Extensive testimony then showed the defendant turned his car around a cul-de-sac, came back, stopped his car, got out of his car and shot Tim Walker in the head at close range. This was the fatal shot and the circumstances surrounding it give rise to a strong inference of defendant's deliberate intent to kill Walker, not merely to wound him.

Evidence showed that defendant, who killed both Tim Walker and also Christine Hitchcock on the same occasion, had been dating Hitchcock off-and-on for about a year and that they had "broken up" several days before the shootings. Defendant did not know Walker, nor did he know that Walker had started dating Hitchcock shortly before the killings. The following, coupled with all the other circumstances, fur-

ther indicate time for deliberation: time lapse between the first shot and the fatal shot; the manual functions necessarily indulged by the defendant in operation of his bolt-action rifle (the murder weapon); and the act of getting out of his car and aiming at Walker's head.

In *State v. Lucero*, 88 N.M. 441, 541 P.2d 430 (1975), defendant was convicted of first degree murder. He appealed, claiming that the evidence was insufficient to support his conviction because he did not have sufficient time to weigh his actions and consider their consequences. In rejecting defendant's claim and affirming his conviction this Court stated, *inter alia*:

> Although a deliberate intention means an intention or decision arrived at after careful thought and after a weighing of the reasons for the commission of the killing, such a decision may be reached in a short period of time. Here there is evidence clearly supporting a deliberate intention on the part of Lucero to kill decedent as well as decedent's wife. Although he was receiving no treatments at El Vicio, Lucero went there armed with a loaded pistol, which was concealed on his person; there was a suspected informer or informers among the group who patronized El Vicio; Sena, with whom Lucero lived, was a member of this group; Sena and decedent's wife, in the presence of Lucero, exchanged some unpleasant words; Lucero then charged decedent with being a "rat"; decedent asked Lucero why he was called a "rat"; and Lucero thereupon drew his gun and proceeded to shoot both decedent and his wife.

*Id.* at 443, 541 P.2d at 432.

Likewise, in the instant case there is evidence clearly supporting a finding of deliberate intention to kill Walker. *See also State v. Hall*, 40 N.M. 128, 55 P.2d 740 (1935); *Torres v. State*, 39 N.M. 191, 43 P.2d 929 (1935). The error claimed from denial of directed verdict as to the first degree murder of Tim Walker is without merit.

III.

On the day that Christine Hitchcock was killed by the defendant she went to her choral music class, taught by Carolyn Wade, just before 1:00 P.M. Christine appeared upset and not her normal self, according to the testimony of Ms. Wade. At the class Kathy Miller, Christine's best friend, also noticed that Christine was not herself. Kathy Miller testified that Christine was trembling and pale, literally shaking, and that she had never seen her that upset. Asked by Kathy what was the matter, Christine replied "Wayne [the defendant] tried to kill me this morning." She told Kathy that Wayne picked her up for school and drove her to Santa Rosa. When they stopped and got out of the car "somewhere", Wayne said that he was going to kill her and himself if she "didn't get back with him". Defendant fired a shot in the air as Christine started to walk away. She hit the ground but got up when she realized that she had not been shot. Kathy further testified that Christine had not attended her 8:00–9:00 A.M. class on the day of her killing. Once Christine had calmed down and had had a chance to reflect, she made Kathy swear not to tell anybody what she had related to her for fear of getting the defendant into trouble.

Within the backdrop of these circumstances, the court permitted Kathy Miller to testify to those matters related to her by Christine Hitchcock as an "excited utterance" exception to the hearsay rule. N.M. R.Evid. 803(2), N.M.S.A.1978 (Cum.Supp. 1979), which reads as follows:

> (2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition * * *.

The amount of time that elapsed between the startling event and Christine's statements to Kathy cannot be determined with exactness. However, under the excited utterance doctrine, there is no definite or fixed limit on time. Admissibility depends more on circumstances than on time and each case must depend upon its own circum-

stances. *See State v. Godwin*, 51 N.M. 65, 178 P.2d 584 (1947); *State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct.App.1978).

 There can be no question but that the account given Kathy by Christine was of a startling event. The lapse of time between that event and the statement relating to it did not significantly erode the stress or excitement resulting to Christine from the event. Personal observations by Christine's best friend and her choral music teacher vouch for the physical and emotional manifestations in Christine of the continued existence of that stress or excitement at the time of the utterance relating to the event that fathered the stress and excitement. The trial judge ruled that Christine's statement was on all fours with the excited utterance exception to the hearsay rule. A trial court is allowed wide discretion in determining whether in fact a declarant is still under the influence of the startling event when the statement is made. *See State v. Gunthorpe*, 81 N.M. 515, 469 P.2d 160 (Ct.App.1970), *cert. denied*, 81 N.M. 588, 470 P.2d 309 (1970), *cert. denied*, 401 U.S. 941, 91 S.Ct. 943, 28 L.Ed.2d 221 (1971); *State v. Godwin, supra; State v. Buck*, 33 N.M. 334, 266 P. 917 (1927).

The statement of Christine to Kathy, additionally was admissible under the exception to the hearsay rule where the declarant is unavailable to testify as set out in N.M.R. Evid. 804(b)(2), N.M.S.A.1978:

(2) *Statement of recent perception.* A statement, not in response to the instigation of a person engaged in investigating, litigating or settling a claim, which narrates, describes or explains an event or condition recently perceived by the declarant, made in good faith, not in contemplation of pending or anticipated litigation in which he was interested, and while his recollection was clear * * *.

 Prior to permitting Kathy to testify to the statement made to her by Christine, Kathy was examined and cross examined extensively about the circumstances surrounding the statement. Reliability, to support the recent perception exception to the hearsay rule, should obviate objection to admissibility of a statement so clothed with circumstances showing veracity.

 In *State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975), the Court discussed generally, in language which we approve, exceptions to the hearsay rule, in part as follows:

The danger of admitting hearsay into evidence is that it is not subject to the usual tests that can be applied to ascertain its truthfulness by cross-examination of the declarant. McCormick on Evidence, § 245 (2d ed. 1972). It is not given under oath nor is the declarant subject to · cross-examination or to the penalties of perjury. *Chiordi v. Jernigan*, 46 N.M. 396, 192 P.2d 640 (1942). However, there are exceptions to the hearsay rule which · depend on circumstantial guarantees of reliability to substitute for the oath, cross-examination and penalties of perjury. *Guarantees of reliability are and must be the key to open the door to the exceptions.*

*Id.* at 41, 536 P.2d at 1097 (emphasis added).

 The trial judge explicitly found that the challenged statement was clothed with the indicia of reliability. We agree with that finding and hold that the statement was admissible either as an excited utterance or the statement of recent perception exception to the hearsay rule.

## IV.

From the inception of his case defendant argued that he was at a place other than the scene of the crimes. Additionally, he elicited testimony from six character witnesses as to his good character. The trial court refused defendant's tendered jury instructions on alibi (N.M.U.J.I.Crim. 41.30, N.M.S.A.1978) and on character witnesses (N.M.U.J.I.Crim. 40.26, N.M.S.A.1978). The use notes to both of the tendered instructions states *"No instruction on this subject shall be given."* (Emphasis added.)

Defendant argues that he was entitled to jury instructions on alibi and character witnesses where he presented evidence to support them and tendered such instructions.

The State contends that the jury was properly given an instruction that covers all of such evidence, namely N.M.U.J.I.Crim. 40.-60, N.M.S.A.1978. That instruction advises the jury of the defendant's presumption of innocence and that the burden is always on the State to prove guilt beyond a reasonable doubt. Further, it is contended that inasmuch as N.M.U.J.I.Crim. 40.60 is adequate, the giving of the two requested instructions would be duplication and would amount to the court commenting on the evidence.

The N.M.U.J.I.Crim. Committee in its commentaries has stated in part, as follows:

There are no New Mexico decisions holding that the jury must be instructed on the question of alibi. Analytically, an alibi is not a technical or "legal" defense but it is used to cast doubt on the proof of elements of the crime. See, e. g., *People v. Williamson,* 168 Cal.App.2d 735, 336 P.2d 214 (1959). Consequently, the committee believed that no instruction on alibi should be given since it merely comments on the evidence.

N.M.U.J.I.Crim. Committee Commentary 41.30, N.M.S.A.1978.

It has apparently been a common practice to instruct the jury on the defendant's good character. See, e. g., *State v. Burkett,* 30 N.M. 382, 234 P. 681 (1925). See generally, Annot., 60 A.L.R. 1068 (1930). The committee, however, believed that this instruction invaded the province of the jury and was a prohibited comment on the evidence. See Rule 105 of the Rules of Evidence and *State v. Myers,* 88 N.M. 16, 536 P.2d 280 (Ct.App. 1975).

N.M.U.J.I.Crim. Committee Commentary 40.26, N.M.S.A.1978.

We agree with both Committee commentaries. The legitimate function of jury instructions is not to further the art of advocacy. Their function is to shed light and eliminate confusion. This function is best achieved by concise instructions, few in number and couched in laymen's language that is free of legal jargon and cumbersome and confusing duplication. Simple and short instructions, few in number and phrased in plain language that tell the jury what law they are to apply, how they are to apply it and what their task as jurors is, guarantees truer and more just verdicts in the greater number of cases. N.M.U.J.I. Crim., insofar as we have been able to determine, is the best and most progressive concept adopted anywhere in the nation. It gives voice to an accurate and judicially sound method of communicating to a jury composed of lay persons in terms and language understandable to them and should be uniformly applied. Our progressive concept of jury instructions can be preserved and developed only through uniformity.

In *People v. Freeman,* 22 Cal.3d 434, 149 Cal.Rptr. 396, 584 P.2d 533 (1978), the California Supreme Court ruled that it would be redundant to give a special instruction on an alibi defense in addition to the general instruction given on reasonable doubt and the State's burden of proof. And in *State v. Garvin,* 44 N.J. 268, 208 A.2d 402 (1965), the New Jersey Supreme Court stated in very cogent language, as follows:

The important thing is to make it plain to jurors that to convict they must be satisfied upon a consideration of all of the evidence that guilt has been established beyond a reasonable doubt. If a defendant's factual claim is laid beside the State's and the jury understands that a reasonable doubt may arise out of the defense testimony as well as the State's, the jury has the issue in plain, unconfusing terms.

44 N.J. at 274, 208 A.2d at 405.

In *State.v. Myers,* 88 N.M. 16, 536 P.2d 280 (Ct.App.1975), a vehicular homicide case, character evidence proffered by the defendant was properly admitted, as it was in the case at bar. In *Myers,* defendant argued that he was entitled to a special jury instruction upon character evidence under *State v. Burkett,* 30 N.M. 382, 234 P. 681 (1925). In rejecting that argument, the Court of Appeals stated in part in the opinion in *State v. Myers, supra*:

We believe the defendant has misconstrued the holding in *State v. Burkett,*

supra, and we hold, as did that court, that to give defendant's requested instructions would only have caused the court to comment upon the weight of the evidence. It is also noted that the court in the case at bar did admit the proffered evidence and did instruct the jury on the weight to be given all evidence, in general.

88 N.M. at 21, 536 P.2d at 285.

In *State v. Sisneros*, 581 P.2d 1339 (Utah 1978), the Utah Supreme Court, in rejecting defendant's tendered instruction on character evidence, stated:

[T]he tendered instruction places undue emphasis and importance on the character evidence, instead of leaving it to the jury to assess the defendant's credibility according to all the evidence and to consider good character as only one factor.

581 P.2d at 1342 (footnote omitted).

 We sustain the trial court's refusal to give special instructions upon alibi and character evidence and reaffirm the use notes to N.M.U.J.I.Crim. 41.30 and 40.26 which direct that *no* instruction be given on those subjects. The N.M.U.J.I.Crim. 40.60 instruction on presumption of innocence and the State's burden of proof beyond a reasonable doubt removed all legitimate claims of prejudice by the defendant.

## V.

 In a criminal case if there is evidence to support, or tending to support, an instruction upon a lesser included offense, the defendant has a right to that instruction. *State v. Aubrey*, 91 N.M. 1, 569 P.2d 411 (1977); *State v. Ulibarri*, 67 N.M. 336, 355 P.2d 275 (1960); *State v. Jiminez*, 89 N.M. 652, 556 P.2d 60 (Ct.App. 1976); *State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App.1975); *State v. Wingate*, 87 N.M. 397, 534 P.2d 776 (Ct.App.1975). Our inquiry, therefore, is limited to whether there was evidence supporting or tending to establish voluntary manslaughter instead of murder.

Defendant correctly points out that if there is circumstantial evidence which is adequate to raise an inference of sufficient provocation to kill, then the crime is manslaughter and not murder. But the evidentiary test for manslaughter is better stated in *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976):

"A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion." [1]

It follows logically and obviously from the definition that, in order to convict of voluntary manslaughter, the jury must have evidence that there was a sudden quarrel or heat of passion at the time of the commission of the crime (in order, under the common law theory, to show that the killing was the result of provocation sufficient to negate the presumption of malice * * *.).

*Id.* at 772, 558 P.2d at 41.

In *State v. Aubrey, supra*, this Court reaffirmed the test previously established in *Smith v. State* that in order for the court to give an instruction on voluntary manslaughter there must be evidence that the killing resulted from a sudden quarrel or in the heat of passion.

 In the case at bar, defendant presented no evidence to show either provocation or an action taken in the heat of passion. To the contrary, defendant claimed that he did not do the killings, because he was at a place other than the scene of the crimes when they occurred. From the State's case, the only inference of provocation is that defendant and Christine Hitchcock had "broken up" several days before the shooting, after having dated off-and-on for about a year. Beyond that, there is no such inference. Prior to the shooting, defendant did not know Walker and did not know that Walker had started dating Christine before the shooting. A high speed chase involving defendant's car and one in which both victims were riding immediately preceded the killings.

1. The definition of voluntary manslaughter remains unchanged in the current compilation at

Section 30–2–3, N.M.S.A.1978.

 

The above evidence may support an inference of a smoldering desire within the defendant to avenge Christine dating another male by doing away with both of them, but it would not support an inference of a "sudden quarrel". Nor can such facts be held to give rise to that provocation recognized in the law as being adequate and proper to negate the presumption of malice.

In *State v. Nevares*, 36 N.M. 41, 7 P.2d 933 (1932), a closely analogous case, this Court stated:

> For something more than a year prior to the homicide the young couple had been friendly, and it is evident from the record that appellant was enamored of the deceased. An estrangement between them took place during the Christmas holidays in December, 1929, and had continued to the day of the homicide.
>
> \* \* \* \* \* \*
>
> \* \* \* He drove away and about an hour and a half later reappeared and sent in a note to deceased by a younger brother. \* \* \* The deceased went out to the car, was seen to be talking to appellant for a few moments and was in the act of returning into the store having one hand on the screen door, for opening same, when appellant jumped from his car with a shotgun, rushed rapidly toward deceased and called upon her to turn toward him. As she did so, he fired directly into her left breast and she fell dead at his feet. The appellant then drove rapidly away.
>
> It is difficult to perceive how on this state of facts an instruction on voluntary manslaughter was warranted or permissible.
>
> \* \* \* \* \* \*
>
> \* \* \* Mere sudden anger or heat of passion will not reduce the killing from murder to manslaughter. *There must be adequate provocation.* The one without the other will not suffice to effect the reduction in the grade of the offense. \* \* \*
>
> The test of whether the provocation was adequate must be determined by considering whether it would have created the passion offered in mitigation *in the ordinary man of average* disposition.

*Id.* at 43–5, 7 P.2d at 935 (emphasis added).

Routinely, men see former girlfriends dating other men. No mitigating circumstances of inferences therefrom transmute defendant's deeds from murder into manslaughter, and no instruction upon manslaughter was justified or appropriate. *See State v. Manus, supra.*

The record in this case from the trial court is free from prejudicial error. The judgment and sentence are affirmed.

IT IS SO ORDERED.

FEDERICI, J., and HARL D. BYRD, District Judge, concur.