915 P.2d 306

### STATE of New Mexico, Plaintiff–Appellee,

v.

### Joe CONTRERAS, Defendant–Appellant.

### No. 16558.

Court of Appeals of New Mexico.

Jan. 11, 1996.

Certiorari Denied April 4, 1996.

Tom Udall, Attorney General, Anthony Tupler, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

### OPINION

HARTZ, Judge.

1. Defendant appeals his conviction for felony shoplifting. Whether shoplifting is a petty misdemeanor, a misdemeanor, or a felony depends on the "value" of the merchandise taken. NMSA 1978, § 30–16–20(B) (Repl.Pamp.1994). Shoplifting merchandise with a value greater than $250 is a felony. Section 30–16–20(B)(3), (4), and (5). When the merchandise has a value between $100 and $250, the offense is a misdemeanor. Section 30–16–20(B)(2). At trial Defendant did not dispute that he shoplifted a necklace,

but he did dispute its value. On appeal he contends that there was insufficient evidence that the necklace had a value exceeding $250. Our second calendar notice, see SCRA 1986, 12–210(D) (Repl.1992) (describing summary calendar), agreed with Defendant's contention and proposed to reverse and remand with instructions to resentence Defendant for the lesser-included offense of misdemeanor shoplifting. The State responded with a memorandum in opposition to the proposed disposition; Defendant did not respond. Unpersuaded by the State's memorandum, we reverse and remand as proposed.

### FACTS

2. Defendant stole a gold necklace from the Montgomery Ward & Company department store. The jewelry department manager for Montgomery Ward, Jan Ellis, testified about the value of the necklace. On direct examination she said that the ticket price of the necklace was $600. On cross-examination, however, she said that she could not recall ever selling such fine jewelry at the ticket price. She indicated that fine jewelry was priced in anticipation of discounting it for sale, a practice she referred to as reference retail pricing. She explained that Montgomery Ward makes its full anticipated profit selling its fine jewelry at 50% to 60% off the ticket price. According to Ms. Ellis, jewelry that is discounted is jewelry that is sold, while undiscounted jewelry is seldom sold.

### DISCUSSION

3. We will sustain a verdict in a criminal case if a rational person could be convinced by the evidence at trial that every element of the offense was proved beyond a reasonable doubt. See State v. Garcia, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992). The element at issue here is the "value" of the stolen merchandise. The word "value" in our shoplifting statute means "market value." Tunnell v. State, 99 N.M. 446, 447, 659 P.2d 898, 899 (1983).

4. The State contends that the evidence of the necklace's ticket price sufficed to establish its market value. We agree that ordinarily an item's ticket price is sufficient evidence of market value. See City of Albu-

*querque v. Martinez,* 93 N.M. 704, 604 P.2d 842 (Ct.App.1979). But the inference that the ticket price represents market value is a rebuttable one. And in some instances, as here, the inference cannot be sustained. A rational juror in this case could not have equated ticket price and market value for the necklace after Ms. Ellis, the State's sole witness on value, explained that in her experience such jewelry is *never* sold at the ticket price.

5. Our uniform jury instruction on the meaning of market value defines it as "the price at which the property could ordinarily be bought or sold at the time of the alleged [offense]." SCRA 1986, 14–1602. In this case the ticket price was not the price at which jewelry was ordinarily bought or sold.

■ 6. Other jurisdictions have noted the difference between the ticket price and market value. In *State v. Garza,* 241 Neb. 256, 487 N.W.2d 551, 557 (1992), the Nebraska Supreme Court pointed out:

[P]rice is the amount that a willing seller indicates as acceptable payment for an article offered for sale, whereas value, in relation to a theft charge, is the price obtainable for property offered for sale in a market. Consequently, a price tag merely expresses the amount at which a seller offers an article for sale, a sum the seller hopes to obtain, and does not necessarily indicate the amount obtainable in the market through payment for the article offered for sale.

The ticket price is not synonymous with the market value if a willing, informed buyer would not pay the ticket price. *Cf. State v. King,* 164 N.J.Super. 330, 396 A.2d 354, 356–57 (1978) (although list price presumptively represents retailer's opinion of what the public is willing to pay, defendant may overcome this prima facie proof of value by showing that the retailer whose merchandise was stolen customarily offers discounts off the posted price of the merchandise), *cert. denied,* 81 N.J. 54, 404 A.2d 1154 (1979). Market value cannot be established by the seller alone. It is the sale price arrived at by a well-informed buyer and a well-informed seller. *See State v. Kleist,* 895 P.2d 398, 401 (Wash.1995) (en banc). The New York Court of Appeals has defined the market value of goods as "the price at which they would probably have been sold in the regular course of business at the time when and place where they were stolen." *People v. Irrizari,* 5 N.Y.2d 142, 182 N.Y.S.2d 361, 364, 156 N.E.2d 69, 71 (1959). This definition captures the meaning of market value applicable in the context of the case before us.

7. At trial Defendant accomplished more than just offering evidence that the ticket price might not represent market value. The only evidence at trial connecting the ticket price to market value established that the ticket price greatly exceeded market value. The probability that the necklace would be sold for $600 in the regular course of business was close to nil. The State's sole witness on value admitted that she could not recall ever selling fine jewelry at its original ticket price. Unless jewelry was on sale, it would not sell. The State argues that the jury was free to accept the ticket price as proof of value and reject the remainder of the evidence showing that the value of the necklace was not its ticket price. In our view, however, the evidence could not persuade a rational juror beyond a reasonable doubt that the ticket price represented market value.

8. In a somewhat similar case, "the owner of the store from which the property was taken testified that while the price tag on the item (a ring) was $2,995, there was a 300 percent markup and it would not have been unusual for him to sell an item of this sort for $2,400 in cash." *State v. Stout,* 273 N.W.2d 621, 623 (Minn.1978) (per curiam). The Minnesota Supreme Court observed that the owner "admitted that he would have willingly sold the ring to a willing buyer for *less* than $2,500," *id.* and concluded that there was insufficient evidence that the value of the ring exceeded $2500. *Id.* Here, the owner's representative made a far stronger statement than simply that she would have been willing to sell the necklace for less than the ticket price; she said, in effect, that she could not have sold it at the ticket price even if she had wanted to.

9. Ms. Ellis testified that Montgomery Ward makes its full anticipated profit by selling its fine jewelry at a discount of 50% to 60%. Because the ticket price of the necklace was $600, her testimony implied that the market value of the necklace would be somewhere between $240 and $300. Nothing in the record would support a jury inference that the market value of the necklace was over $250 rather than under $250. A verdict, particularly in a criminal case, cannot rest on unsupported conjecture. *See Herron v. State*, 111 N.M. 357, 362, 805 P.2d 624, 629 (1991) ("Evidence equally consistent with two hypotheses tends to prove neither."); *State v. Seward*, 104 N.M. 548, 550, 724 P.2d 756, 758 (Ct.App.) (substantial evidence of value does not consist of inferences based on conjecture), *cert. denied*, 104 N.M. 522, 724 P.2d 231 (1986). Accordingly, we hold that Defendant's conviction for felony shoplifting must be set aside. We reverse and remand to the district court with instructions to resentence Defendant for the lesser-included offense of misdemeanor shoplifting.

10. **IT IS SO ORDERED.**

BLACK and FLORES, JJ., concur.