This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                **No. 29,690**

**SOLOMON PENA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Solomon Pena's charges arose from nighttime burglaries of four retail stores in Albuquerque, New Mexico, during which various electronic items and jewelry were stolen. He appeals his convictions on four counts of commercial burglary, four counts of conspiracy to commit commercial burglary, two counts of larceny (over $500 but no more than $2,500), two counts of larceny (over $2,500 but no more than $20,000), and three counts of contributing to the delinquency of a minor. And he raises two issues, sufficiency of the evidence, and whether the jury instructions' failure to define "market value" constituted fundamental error. We affirm.

**Sufficiency of the Evidence**

We apply a substantial evidence standard of review as set out in *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515, *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176, *State v. Sutphin*, 107 N.M. 126, 130-31, 753 P.2d 1314, 1318-19 (1988), and *State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980).

**Commercial Burglary and Larceny**

The charges arose from Defendant's unauthorized entries of and larcenies from four different businesses in Albuquerque over a two-and-a-half week period. The burglaries and larcenies involved a Hastings store at 12501 Candelaria NE, on or

about December 28, 2006 (over $2,500 but no more than $20,000) (Counts 5 and 6); a Kmart store at 2100 Carlisle NE, on or about December 31, 2006 (over $500 but no more than $2,500) (Counts 9 and 10); a Circuit City store at 10420 Coors By-Pass NW, on or about January 7, 2007 (over $500 but no more than $2,500) (Counts 17 and 18); and a Toys R Us store at 3701 Ellison NW, on or about January 14, 2007 (over $2,500 but no more than $20,000) (Counts 21 and 22).

As to commercial burglary, the jury was instructed that the State must prove:

> 1.   . . . [D]efendant entered a structure without authorization, to wit:  [name of store and location];
>
> 2.   . . . [D]efendant entered the structure with the intent to commit a theft when inside[.]

*See* UJI 14-1630 NMRA; NMSA 1978, § 30-16-3(B) (1971).  As to larceny, the jury was instructed that the State must prove:

> 1.   . . . [D]efendant took and carried away various items belonging to [name of store] or another, which had a market value over [$500 or $2,500] but no more than $[2,500 or $20,000];
>
> 2.   At the time he took this property, . . . [D]efendant intended to permanently deprive the owner of it[.]

*See* UJI 14-1601 NMRA; NMSA 1978, § 30-16-1 (2006).

Nancy Droll's trial testimony identified Defendant as a participant in all four burglaries.  She testified that Defendant had been her boyfriend and that they had lived together for a little over a year, ending on January 17, 2007, when he moved out.

3

Defendant admitted to her that he had participated in the burglary of the Hastings store on December 28, 2006, and Droll testified that Defendant had brought back X-Boxes, games for X-Boxes, and movies from Hastings. Defendant also told Droll that he had participated in the burglary of the Kmart store on December 31, 2006. She testified about seeing "the things that he brought back" from Kmart, such as, "[a] lot of jewelry, a TV, movies, DVDs, [and] games." Defendant also admitted to Droll that he was involved in the burglary of a Circuit City on January 7, 2007, and she testified that she saw iPods and games that Defendant had brought back from Circuit City. Droll knew Defendant was involved in the January 14, 2007, burglary of the Toys R Us store because she had been there herself as the driver. She saw Defendant and two others come out of the store with PlayStation 2s and games. Finally, Droll identified Defendant by his clothing in security surveillance videotapes of the Toys R Us burglary on January 14, 2007, and the Kmart burglary on December 31, 2006.

Droll's testimony also constituted evidence of the four larcenies, as she testified regarding the specific items Defendant brought back from each burglary. Store personnel provided additional evidence as to the nature and value of the items taken. Rick Taylor, store manager at the Hastings burglarized on December 28, 2006, testified that ten to twelve X-Boxes with an average value of $400 each, eight to ten PlayStation Portables worth $100 to $200 each, and about eighty X-Box games worth

an average of $30 each were stolen. Taylor estimated the total loss at $6,500 to $6,700. Margaret Cheeks, a night stocker at the Kmart store burglarized on December 31, 2006, testified that she was familiar with the merchandise and described that at least two glass jewelry cases had been broken where over $500 worth of jewelry was kept, and after viewing the security video, she identified the jewelry from those cases being removed from the store in a "very expensive" shopping cart. Cheeks also testified about the security video showing the burglars moving $2,000 to $3,000 worth of video games and players. Michael Verble, who was the operations manager at the Circuit City burglarized on January 7, 2007, testified that "some laptops" were missing following that burglary and estimated the loss at "[$5,000] to $10,000, closer to . . . [$]10,000." James Huron, store manager at the Toys R Us burglarized on January 14, 2007, testified that various PlayStation video games and game systems were taken, valued at $10,263.11.

Larceny also requires proof of intent to permanently deprive the owner of the property taken. *State v. Puga*, 85 N.M. 204, 206, 510 P.2d 1075, 1077 (Ct. App. 1973); *see* UJI 14-1601. "Intent is subjective and is almost always inferred from other facts in the case. It is rarely established by direct evidence." *State v. Frank*, 92 N.M. 456, 458, 589 P.2d 1047, 1049 (1979). The totality of the circumstances of the four burglaries, which included breaking into the buildings during predawn hours and

smashing display cases, suggests intent to permanently deprive the owners of the property taken. Trial testimony also provided evidence that Defendant took the items with the intent to permanently deprive the owners of them. When questioned about events leading up to the December 28, 2006, burglary of the Hastings store, Mark Kibler testified that he and others had been "hanging out, having drinks" at Droll's apartment when Defendant or Droll suggested that they could "go make money" or "need[ed] to make money." Kibler believed the items taken in the burglary were going to be sold.

Droll and Kibler were extensively cross-examined concerning the plea agreements they had reached with the State for their participation in the burglaries and their resulting motives for cooperating with the State in prosecuting Defendant. "It is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence." *State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470. The credibility of their testimony was a question for the jury.

Given the evidence presented about Defendant's involvement in the commercial burglaries and related larcenies, we conclude that sufficient evidence supported Defendant's convictions for the commercial burglaries and the related larcenies.

**Conspiracy to Commit Commercial Burglary**

"Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2(A) (1979). "The crime of conspiracy is rarely susceptible of proof by direct evidence. Nevertheless, it can be established by circumstantial evidence." *State v. Deaton*, 74 N.M. 87, 89, 390 P.2d 966, 967 (1964). "While common design is the essence of a conspiracy, this fact may be established by evidence other than that the parties came together and actually agreed upon a method of operation for the accomplishment of the offense." *Id.* at 89, 390 P.2d at 967-68. "A mutually implied understanding is sufficient so far as combination or confederacy is concerned, and the agreement is generally a matter of inference deduced from the facts and circumstances[] and from the acts of the person accused done in pursuance of an apparent criminal purpose." *Id.* at 90, 390 P.2d at 968.

The four counts of conspiracy to commit commercial burglary corresponded to the dates and locations of the four commercial burglaries discussed earlier. To find Defendant guilty of each count, the jury was instructed that the State must prove:

> 1.    . . . [D]efendant and another person by words or acts agreed together to commit [c]ommercial [b]urglary;

> 2.    . . . [D]efendant and the other person intended to commit [c]ommercial [b]urglary[.]

*See* UJI 14-2810 NMRA; § 30-28-2(A).

7

It is reasonable to infer from the circumstances that Defendant's presence with other persons in stores they had broken into during non-business hours was the result of an agreement to commit commercial burglary. There was also more specific evidence of conspiracies. Regarding the Hastings store burglary, Kibler testified that he, Droll, Nicholas J., and Defendant had been at Droll's apartment when Defendant or Droll suggested that they could "go make money," which Kibler understood to mean "something illegal." Regarding the Toys R Us burglary, Droll testified that she had served as the driver while Defendant, Kibler, and at least one other person entered the store after Defendant broke the front window. Droll also testified as to the presence of Defendant, Kibler, Nicholas J., and two others at the Kmart burglary, as well as the presence of Defendant and Nicholas J. at the Circuit City burglary. Based on the evidence presented, we conclude that sufficient evidence existed for Defendant's four convictions for conspiracy to commit commercial burglary.

**Contributing to the Delinquency of a Minor**

Defendant was convicted of three counts of contributing to the delinquency of a minor, Nicholas J., in connection with the burglaries and/or larcenies of the Hastings store on or about December 28, 2006, the Kmart store on or about December 31, 2006, and the Circuit City store on or about January 7, 2007. "Contributing to the delinquency of a minor consists of any person committing any act or omitting the

8

performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." NMSA 1978, § 30-6-3 (1990). "The jury can convict for [contributing to the delinquency of a minor] if the defendant's act actually caused or encouraged the particular minor to commit a delinquent act or if the act only tends to cause or encourage delinquency generally. The 'tends to cause or encourage' language refers to an objective view of [the] defendant's conduct." *State v. Trevino*, 116 N.M. 528, 534, 865 P.2d 1172, 1178 (1993).

To find Defendant guilty of contributing to the delinquency of a minor, the jury was instructed that Nicholas J. was under the age of eighteen and that the State must prove:

> 1. . . . [D]efendant conspired with Nicholas [J.] to commit the offense of [c]ommercial [b]urglary and/or [l]arceny;
>
> 2. This caused or encouraged Nicholas [J.] to commit the offense of [c]ommercial [b]urglary and/or [l]arceny[.]

*See* UJI 14-601 NMRA.

No issue exists with regard to Nicholas J.'s age. Nicholas J. testified that he had entered a plea in children's court to the burglaries of Hastings and Circuit City. He also acknowledged that he had previously given a statement admitting to the Kmart burglary. Droll testified that Nicholas J. was present at these three burglaries.

9

As discussed earlier in this opinion, Droll had also testified as to Defendant's involvement in these three burglaries. From the evidence presented during trial, we conclude that sufficient evidence supported findings that Defendant engaged in conduct sufficient to "[tend] to cause or encourage" Nicholas J. to commit the burglaries and larcenies. *See* § 30-6-3.

**Failure to Define "Market Value"**

Defendant argues that the district court erred in failing to define "market value" as that phrase was used in the jury instructions for larceny. He acknowledges that he did not object to this omission at trial and thus did not preserve the issue. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted). "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *Cunningham*, 2000-NMSC-009, ¶ 13 (internal quotation marks and citation omitted). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction

10

to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. In the context of fundamental error review of errors in jury instructions, we first "determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Cunningham*, 2000-NMSC-009, ¶ 14 (internal quotation marks and citation omitted).

The jury was instructed that the State must prove Defendant "took and carried away various items belonging to [name of business] or another, which had a market value over [dollar amount.]" The instruction tracked UJI 14-1601. One of the use notes for this uniform jury instruction states, "*See* UJI 14-1602 [NMRA] for definition of market value." UJI 14-1602 states, "'Market value' means the price at which the property could ordinarily be bought or sold at the time of the alleged [criminal act]." One of the use notes for UJI 14-1602 states, "For use if market value is in issue. This instruction should be given immediately after UJI 14-1601[.]"

The State argues that market value was not in issue in Defendant's case because he did not present any evidence contradicting the evidence introduced by the State. While we agree with the State that the district court's failure to instruct the jury as to the definition of "market value" does not rise to the level of fundamental error, we disagree with the assertion that market value was not in issue. The State was required

11

to prove the market value of the property in order to establish the level of the offenses as third degree felonies (Counts 6 and 22) or fourth degree felonies (Counts 10 and 18). Market value was in issue, and UJI 14-1602 should have been given.

In the absence of the definition of "market value" as set forth in UJI 14-1602, the jurors of necessity had to determine the meaning of this phrase for themselves. Where the property in question is new merchandise stolen from a retail store, some of it with price tags still attached, the evidence of selling price as introduced at trial constituted evidence of "the price at which the property could ordinarily be bought or sold[.]" *Id.* We have little doubt that the jury, presented with this evidence, would have concluded on its own that these amounts represented the "market value" of the items. *See, e.g.*, *City of Albuquerque v. Martinez*, 93 N.M. 704, 705, 604 P.2d 842, 843 (Ct. App. 1979) (holding that uncontradicted testimony in a shoplifting case regarding an item with a price tag is sufficient circumstantial evidence of value); *cf. State v. Contreras*, 1996-NMCA-045, ¶¶ 4-5, 8, 121 N.M. 550, 915 P.2d 306 (reversing felony shoplifting conviction where price tag evidence was contradicted by testimony that jewelry was never sold at ticketed price).

In these circumstances, where there was substantial and uncontradicted evidence of the selling prices of the items stolen, where there is no indication that the jury's understanding of the phrase "market value" differed from that set forth in UJI

12

14-1602, and where none of the testimony of the value of the property stolen suggested that the value was close to the lower end of the dollar value range for the particular offense, we decline to conclude that Defendant's "guilt is so doubtful that it would shock the judicial conscience to allow the conviction[s] to stand." *Baca*, 1997-NMSC-045, ¶ 41. We therefore reject Defendant's fundamental error contention.

**Correction of Judgment**

We note an inconsistency between the description of the charges in Counts 8, 12, and 20, for which Defendant was found guilty according to the verdict forms, and the descriptions of those three counts as stated in the district court's judgment, partially suspended sentence and commitment. The verdict forms describe the charges in the three counts as conspiracy to commit commercial burglary, while the judgment describes them as contributing to the delinquency of a minor. The judgment appears to be incorrect in this regard, and we remand for entry of a corrected judgment.

**CONCLUSION**

We affirm Defendant's convictions and remand for correction of the judgment, partially suspended sentence and commitment.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

WE CONCUR:

_____
**RODERICK T. KENNEDY, Judge**

_____
**LINDA M. VANZI, Judge**